**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSHUA J. NATHAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11-cv-02231 |
| v. | ) | |
| | ) | |
| MORGAN STANLEY RENEWABLE | ) | **JURY DEMANDED** |
| DEVELOPMENT FUND, LLC, THIRD | ) | |
| PLANET WINDPOWER, LLC, JAMES | ) | |
| KUTEY, WALTER KAMP, LORAINE | ) | |
| WINDPARK PROJECT, LLC, AND | ) | |
| TPW PETERSBURG, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Joshua J. Nathan ("Nathan"), by his undersigned attorneys, for his Second Amended Complaint against Defendants Morgan Stanley Renewable Development Fund, LLC ("Morgan Stanley"), Third Planet Windpower, LLC ("TPW"), James Kutey ("Kutey"), Walter Kamp ("Kamp"), Loraine Windpark Project, LLC ("Loraine"), and TPW Petersburg ("Petersburg"), states as follows:

### Nature of the Case

1.     This dispute concerns unlawful retaliation against Nathan, the former General Counsel of Morgan Stanley subsidiary TPW.  Nathan took actions to protect TPW from the conduct of two senior officers – Kamp and Kutey – and their treatment of the sole female member of the company's management team.  The conduct of Kamp and Kutey had created a liability risk for TPW.

2.     TPW retaliated against Nathan, including terminating him, and has since refused to pay Nathan bonuses and other sums to which he is contractually entitled under his

employment agreement with TPW. Accordingly, in this action, Nathan asserts claims for breach of contract; breach of the duty of good faith and fair dealing; unjust enrichment; detrimental reliance; fraudulent misrepresentation; violation of the Illinois Wage Payment and Collection Act; and retaliatory discharge.

### Subject Matter Jurisdiction, Parties and Venue

3.      Count VII below asserts a claim for retaliatory discharge under 42 U.S.C. § 2000. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state statutory claims and common-law claims under 28 U.S.C. § 1367.

4.      In addition, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and, as alleged below, is between citizens of different states.

5.      Nathan is a citizen of Illinois and resides in Cook County, Illinois.

6.      On information and belief, Morgan Stanley is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of New York.

7.      On information and belief, TPW is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Florida. On information and belief, TPW is a corporate subsidiary of Morgan Stanley.

8.      On information and belief, Kutey is an individual residing in the State of Florida, and the Chief Development Officer of TPW.

2

9.     On information and belief, Kamp is an individual residing in the State of Florida, and the Chief Executive Office of TPW.

10.     On information and belief, Loraine is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Texas.

11.     On information and belief, Petersburg is a limited liability company organized under the laws of the State of Delaware with its principal place of business in the State of Nebraska.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District, because Nathan is a resident of this District, and because throughout the relevant period TPW maintained an office in this District.

## Personal Jurisdiction

13.     This Court has personal jurisdiction over Morgan Stanley because, on information and belief, Morgan Stanley does business within Illinois.  Additionally, this Court has personal jurisdiction over Morgan Stanley under the Illinois long-arm statute, 735 ILCS 5/2-209, because this action arises from Morgan Stanley's transaction of business in Illinois, and Morgan Stanley's tortious conduct directed to the State of Illinois.

14.     This Court has personal jurisdiction over TPW because, on information and belief, TPW does business within Illinois, and at all relevant times, maintained an Illinois office.  Additionally, this Court has personal jurisdiction over TPW under the Illinois long-arm statute, 735 ILCS 5/2-209, because this action arises from TPW's transaction of business in

Illinois, TPW's making or performance of a contract substantially connected with Illinois, and TPW's tortious conduct directed to the State of Illinois.

15.     This Court has personal jurisdiction over Kutey under the Illinois long-arm statute, 735 ILCS 5/2-209, because this action arises from Kutey's transaction of business in Illinois, and Kutey's tortious conduct directed to the State of Illinois.

16.     This Court has personal jurisdiction over Kamp under the Illinois long-arm statute, 735 ILCS 5/2-209, because this action arises from Kamp's transaction of business in Illinois, and Kamp's tortious conduct directed to the State of Illinois.

17.     This Court has personal jurisdiction over Loraine because, on information and belief, Loraine does business within Illinois.  Additionally, this Court has personal jurisdiction over Loraine under the Illinois long-arm statute, 735 ILCS 5/2-209, because this action arises from Loraine's transaction of business in Illinois through the acts of TPW, and the making or performance of a contract substantially connected with Illinois.

18.     This Court has personal jurisdiction over Petersburg because, on information and belief, Petersburg does business within Illinois.  Additionally, this Court has personal jurisdiction over Petersburg under the Illinois long-arm statute, 735 ILCS 5/2-209, because this action arises from Petersburg's transaction of business in Illinois through the acts of TPW, and the making or performance of a contract substantially connected with Illinois.

### Background

**Nathan Signs An Employment and Compensation Agreement With TPW**

19.     TPW is a wind energy development and operating company and, according to its website, its wind development pipeline spans the West, the Great Plains, the Midwest and the Southeast regions.

20.    Nathan is an attorney and has spent much of his career as in-house counsel for wind energy companies.  In early 2008, he had discussions with TPW's then-CEO, Peter Mastic, about joining TPW.  After a series of meetings, Mastic invited Nathan to join TPW as its General Counsel and Vice-President.

21.    The terms of Nathan's employment were memorialized in an April 11, 2008 letter agreement to Nathan from Mastic (the "Contract"; attached here as Exhibit A).  The Contract expressly provides that Nathan's compensation package included two separate bonus categories – project completion bonuses, and annual bonuses:

> "[Y]ou will be eligible for annual bonuses and participate in projection completion bonuses of at least $20,000 per MW [megawatt] or $1 million per project, whichever is less.  Project completion bonuses **will be** awarded to the project team responsible for the successful completion and operation of each qualifying project.  As Vice President, General Counsel, I expect that you will be involved in most or all of our projects and most or all of our project completion bonuses."  [emphasis added]

22.    The Contract also expressly provides that Nathan's compensation package was to include an equity position in TPW:

> "[Y]ou would receive one-half (1/2) of one point (out of 100) of the manager's share, subject to the vesting provisions contained in the TPW Operating Agreement and Members Agreement, including time vesting over the four (4) year period ending November 9, 2010.  Depending on our success in creating value for the TPW platform, this equity position could be worth $250,000 to $750,000, or more."

23.    TPW offered the equity position to Nathan in order to induce him to accept a compromised severance package.  For example, on April 3, 2008, during the negotiations that immediately preceded the Contract, Mastic wrote Nathan: "[T]he fact that you would be getting an equity position that is already 40% vested and that is expected to be fully vested November 9, 2010 or sooner, should moderate the need for severance."

24. Mastic and his successors, Kutey and Kamp, subsequently acknowledged TPW's obligation to deliver the equity position on numerous occasions.

**Nathan's Performance as General Counsel**

25. Nathan devoted substantial amounts of his time during his tenure as TPW's General Counsel to three TPW projects, to which the project completion bonus schedule applies: *Loraine I Project*, based in Texas; *Loraine II Project*, also based in Texas; and *Petersburg Project*, based in Nebraska. For each of the three projects, there were approximately five individuals, including Nathan, entitled to share in project completion bonuses.

26. Among other things, Nathan's responsibilities and contributions on each of these projects included turbine supply agreement amendments and change orders; negotiating all three Balance of Plant agreements and associated change orders; negotiating an above market Purchase Agreement; negotiating an interconnection agreement; researching and opining on successful federal grant applications; and negotiating various land use and easement agreements.

27. Loraine I achieved commercial operation in December 2009, and has been generating revenue since that time.

**New Tumultuous TPW Leadership**

28. Mastic subsequently departed TPW, and in early 2010, two new individuals from within TPW were promoted to leadership positions: Kamp became TPW's Chief Executive Officer, and Kutey became TPW's Chief Development Officer.

29. Almost immediately after Kutey and Kamp assumed leadership positions, the Vice-President of Finance at TPW – and the *sole female member* of the TPW management team – complained of abusive conduct by Kutey and Kamp that the female manager believed was directed at her.

30.     The female manager relayed these complaints to Nathan in his capacity as TPW General Counsel.  She informed Nathan that on numerous occasions, Kutey and Kamp had verbally berated her, treated her unprofessionally, and cut-off communications with her, to the point that her ability to execute her job functions was significantly impeded.

31.     As TPW's General Counsel, Nathan became significantly concerned about this situation because of the liability risk it posed for TPW.  Nathan's concerns were particularly acute because Nathan is aware that Kutey and Kamp have, on prior occasions, told other TPW employees not to give the female manager support in order to make her look bad.

32.     Meanwhile, the female manager's complaints about Kutey's and Kamp's conduct toward her continued, and even increased in frequency.  She began supplementing these complaints by forwarding email exchanges between her and Kutey/Kamp.

33.     Because of his concern of the liability risk this situation posed, and because it was his *job* to mitigate that risk, Nathan procured the advice of outside employment counsel.

34.     Outside employment counsel confirmed that the situation posed a liability risk to TPW and needed to be addressed immediately.

35.     Nathan requested a meeting in Chicago in August 2010 when Kutey and Kamp were already scheduled to be in Chicago for other TPW business.  Kutey ignored the request.  Kamp responded: "We need to discuss our priorities" and "Our discussion will need to fit around our other meetings."

36.     After practically begging them to meet during their Chicago trip, a meeting finally took place on August 17, 2010.  Nathan relayed the female manager's current complaints, and Nathan's concerns, about the allegations of Kutey's and Kamp's behavior and

the risk it was creating for TPW. A series of meetings and conference calls occurred the following week, including legal consultation with TPW outside employment counsel and Morgan Stanley.

**Retaliatory Conduct Against Nathan**

37.     As recently as May 2010 – shortly before the point when Nathan first began raising the issue with the female manager – Kutey and Kamp confirmed with Nathan that his job performance was excellent.

38.     After confronting Kutey and Kamp about this situation, however, Kutey's and Kamp's treatment of Nathan became openly hostile. And for the first time, Kutey and Kamp started raising "performance issues" about Nathan's work, which were clearly pretextual and without basis in fact.

39.     This retaliatory conduct culminated with Nathan's termination from the Company in February 2011.

40.     Nathan had an objectively reasonable subjective belief, confirmed by outside employment counsel, that based on the complaints levied by the female manager, the conduct of Kutey and Kamp created a liability risk for TPW.

41.     Nathan was targeted for termination (and other retaliatory conduct prior to his termination) because – consistent with his responsibilities as TPW's General Counsel – he sought to protect TPW from the conduct of Kutey and Kamp.

42.     The retaliatory conduct of Kutey and Kamp directed toward Nathan was motivated by malice.

**Damages**

43.     Loraine I Project has been completed, thus triggering Nathan's entitlement to a project completion bonus under the Contract in connection with Loraine I Project.

44.     On information and belief, Loraine II Project and Petersburg Project have not yet been completed.  Once completed, Nathan will be entitled under the Contract to project completion bonuses for Loraine II Project and Petersburg Project.

45.     Since his termination, TPW has refused to pay Nathan the bonuses and other compensation to which he is entitled under the Contract, as explained below.

46.     First, TPW failed to award Nathan the equity package that he was expressly entitled to under the Contract, and in exchange for which Nathan agreed to forego a significant severance payment.

47.     Second, TPW failed to award Nathan a project completion bonus in connection with Loraine I Project.

48.     Third, TPW has taken the position – contrary to the Contract – that Nathan is not entitled to any project completion bonus for Loraine II Project and Petersburg Project once those projects are completed.

49.     Fourth, in addition to the foregoing, TPW failed to award Nathan any discretionary bonus in 2010.  Although the award of such bonus is discretionary and not automatic under the Contract, TPW's failure to *evaluate* the award of any discretionary bonus in good faith constitutes a breach of the Contract.

50.     All other conditions precedent to the Contract have been satisfied, except that Loraine II and Petersburg have not yet been completed.[1]

---

[1] Those projects are the subject of Count II for Declaratory Judgment.

**Loraine and Petersburg Are Alter Egos of TPW**

51.     The obligations of TPW are also the obligations of Loraine and Petersburg in that there is such a unity of interest and ownership amongst all of them that the individuality or separateness of each of these entities has ceased. This is demonstrated by the fact that:

a. At all times relevant to this litigation, Loraine and Petersburg were solely influenced, governed and controlled by TPW.  For example, Loraine and Petersburg have no employees of its own; TPW officers and personnel control and operate Loraine and Petersburg.

b. At all times relevant to this litigation, Loraine and Petersburg were intentionally undercapitalized for the reasonable needs of their businesses.  For example, funds maintained in Loraine and Petersburg operating accounts were wired directly by TPW on an as-needed basis, and Loraine and Petersburg had no independent sources of revenue.

c. At all times relevant to this litigation, TPW's funds, and the funds of Loraine and Petersburg, were commingled and repeatedly transferred back and forth between TPW bank accounts, on the one hand, and Loraine and Petersburg accounts, on the other hand.

52.     Adhering to the fiction of TPW's separate corporate existence, as well as that of Loraine and Petersburg, would sanction a fraud or deception upon Nathan and would promote injustice and inequitable consequences.

**Morgan Stanley Was A Direct Participant In**
**The Actionable Misconduct of TPW, Kamp and Kutey**

53.     In the ordinary course of business, at all relevant times, Kutey and Kamp consistently consulted with Morgan Stanley about business decisions. Moreover, Morgan Stanley has a majority presence on the TPW board.

54.     In particular, as explained below, Morgan Stanley was aware of and sanctioned each of the specific acts of retaliatory conduct and wrongful conduct directed toward Nathan.

55.     With respect to project completion bonuses, Kutey and Kamp stated to Nathan that Morgan Stanley made the decision that only people who worked at the Loraine I Project site would get project completion bonuses.

56.     Martin Torres of Morgan Stanley – and a member of the TPW Board of Managers – confirmed Kutey and Kamp's statements about Morgan Stanley's involvement. Specifically, Torres stated to Nathan that Torres had "discussed [Nathan's] situation with them and supports their position" to engage in the foregoing course of conduct.

57.     In so doing, Morgan Stanley exerted control over TPW in a way that surpasses the control exercised as an incident of ownership, and Morgan Stanley was a direct participant in the foregoing conduct.

## COUNT I
### Breach of Contract
### (TPW, Loraine, Petersburg, Morgan Stanley)

58.     Nathan repeats the allegations of paragraphs 1-57 of this Complaint as though fully alleged herein.

59.     The Contract between TPW and Nathan is a valid and enforceable contract.

60.     Nathan has performed all his duties pursuant to the Contract.

61.     TPW breached the contract by refusing to pay Nathan sums due and owing under the Contract.

62.     TPW owed Nathan a duty to exercise good faith in its dealings with Nathan and to deal fairly with Nathan by remitting sums properly due and owing Nathan under the Contract.

63.     TPW has willfully breached its duty of good faith to Nathan through the foregoing conduct described above.

64.     Nathan has incurred damages and other injury as a result of TPW's breach.

65.     Loraine and Petersburg are jointly and severally liable for TPW's breach of contract because they are alter egos and/or business conduits of one another and of TPW.

66.     Morgan Stanley is jointly and severally liable for TPW's breach of contract because it was a direct participant in the decisions to breach the Contract.

## COUNT II
### Declaratory Judgment
### (TPW, Loraine, Petersburg, Morgan Stanley)

67.     Nathan repeats the allegations of paragraphs 1 through 66 of this Complaint as though fully alleged herein.

68.     An actual justiciable controversy exists between Nathan, on the one hand, and TPW, Loraine, Petersburg, and Morgan Stanley, on the other hand, concerning whether Nathan is entitled to a project completion bonus in connection with Loraine II and Petersburg if and when those projects are completed.

69.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Nathan seeks a declaration concerning the parties' contractual rights and obligations.

## COUNT III
### (In the Alternative to Count I)
### Unjust Enrichment
### (TPW, Loraine, Petersburg, Morgan Stanley)

70.     Nathan repeats the allegations of paragraphs 1 through 57 of this Complaint as though fully alleged herein.

71.     TPW, Loraine, Petersburg and Morgan Stanley have been unjustly enriched by receiving the benefits of performance by Nathan, while at the same refusing to remit payment for the full amounts due and owing Nathan.

72.     This unjust enrichment has been to the detriment of Nathan.

73.     TPW, Loraine, Petersburg and Morgan Stanley continue to refuse to remit payment for the full amounts due and owing Nathan.

74.     The retention of funds which are properly due and owing Nathan violates fundamental principles of justice, equity, and good conscience.

**COUNT IV**
**(In the Alternative to Count I)**
**Promissory Estoppel/Detrimental Reliance**
**(TPW, Kutey, Kamp, Morgan Stanley)**

75.     Nathan repeats the allegations of paragraphs 1 through 57 and paragraphs 70 through 74 of this Complaint as though fully alleged herein.

76.     TPW represented to Nathan that Nathan would receive bonuses and an equity position in TPW under the Contract.

77.     Kutey and Kamp subsequently reaffirmed those representations.

78.     TPW, Kutey and Kamp made these representations with the intent that Nathan rely on them.

79.     Morgan Stanley was a direct participant in the decisions to reaffirm those representations.

80.     Nathan reasonably relied on these representations to his detriment, including without limitation accepting and maintaining employment with TPW and agreeing to the Contract, for the benefit of TPW.

<u>COUNT V</u>
**Promissory Fraud**
**(TPW, Kutey, Kamp, Morgan Stanley)**

81.     Nathan repeats the allegations of paragraphs 1 through 69 of this Complaint as though fully alleged herein.

82.     TPW, Kutey and Kamp represented to Nathan that he would be entitled to bonuses and an equity position under the Contract, when in fact, TPW, Kutey and Kamp had no intention of honoring those representations.

83.     TPW, Kutey and Kamp made promises and representations that they would render performance due under the Contract, when in fact, at the time those promises were made, TPW, Kutey and Kamp had no intention to perform.

84.     Morgan Stanley was a direct participant in the decisions to make the foregoing promises and misrepresentations.

85.     The foregoing promises and misrepresentations were made for the purpose of inducing Nathan's continued performance under the Contract.

86.     Nathan reasonably relied on those misrepresentations.

87.     The foregoing promises and misrepresentations were part of a scheme to defraud Nathan.

88.     TPW, Kutey, Kamp and Morgan Stanley engaged in the above fraudulent scheme through a pattern of deliberate, illegal, willful, wanton, and especially egregious conduct exhibiting a conscious disregard for Nathan's rights.

## COUNT VI
### Illinois Wage Payment and Collection Act
### (TPW, Kutey, Kamp, Morgan Stanley)

89.     Nathan repeats the allegations of paragraphs 1 through 69 of this Complaint as though fully alleged herein.

90.     At all relevant times, Nathan was an "employee" within the meaning of the Illinois Wage Payment and Collection Act (the "Act"), 820 ILCS §§105 *et seq.*

91.     At all relevant times, TPW maintained an office in the State of Illinois, and made wage payments for work undertaken by its employees.  Accordingly, TPW is an "employer" within the meaning of the Act.

92.     Through the Contract, Nathan, on the one hand, and TPW, on the other hand, entered into an agreement that Nathan would receive certain compensation.

93.     TPW refused and continues to refuse to pay Nathan compensation to which he is entitled under the Contract.

94.     At all relevant times, Kutey, Kamp, and Morgan Stanley knowingly permitted TPW to violate the provisions of the Act and, accordingly, are deemed to be employers within the meaning of the Act.

95.     TPW, Kutey and Kamp have violated the Contract by denying Nathan some portion of wages and/or final compensation.

96.     Nathan has suffered, and continues to suffer, damages by reason of the foregoing violations of the Act.

97.     On March 16, 2011, Nathan sent a demand letter to TPW, Kutey, Kamp, and Morgan Stanley pursuant to the Attorneys Fees in Wage Actions Act (the "Fees Act").

Despite the demand letter, TPW, Kutey and Kamp have failed and refused to make payment to Nathan for the amounts owed him.

## COUNT VII
### Retaliatory Discharge
### (Morgan Stanley, TPW, Kamp and Kutey)

98.     Nathan repeats the allegations of paragraphs 1 through 97 of this Complaint as though fully alleged herein.

99.     Under Title VII of the Federal Code, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

100.    Title VII also provides that it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to "compensation, terms, conditions, or privileges of employment" because of that individual's gender.  42 U.S.C. § 2000e–2(a)(1).

101.    Nathan was terminated and retaliated against for opposing an unlawful employment practice.

102.    On May 17, 2011, Nathan received a right to sue letter from the Equal Employment Opportunity Commission, authorizing Nathan to pursue his claim for retaliatory discharge against TPW, Kamp and Kutey.  (A true and correct copy of the May 17 EEOC letter is attached hereto as Exhibit B.)

103.    On July 8, 2011, Nathan received an additional right to sue letter from the Equal Employment Opportunity Commission, authorizing Nathan to pursue his claim for

retaliatory discharge against Morgan Stanley. (A true and correct copy of July 8 EEOC letter is attached hereto as Exhibit C.)

## JURY DEMAND

Nathan respectfully demands trial by jury as to all questions so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua J. Nathan prays that this Court:

(A)     Enter judgment in favor of Nathan and against Defendants;

(B)     Enter a declaration that Nathan is entitled to both compensatory and exemplary damages;

(C)     Enter a declaration that Nathan is entitled to a project completion bonus in connection with Loraine II and Petersburg if and when those projects are completed;

(D)     Enter a declaration that Nathan is entitled to his attorney's fees and costs, pursuant to the Fees Act and other applicable law; and

(E)     Award such other and further declaratory or other relief as justice requires.


Dated: July 8, 2011                                        Respectfully submitted,


                                                           /s/ Joseph J. Siprut
                                                           One of the Attorneys for Plaintiff
                                                           Joshua J. Nathan

Joseph J. Siprut
*jsiprut@siprut.com*
SIPRUT PC
122 South Michigan Ave.
Suite 1850
Chicago, Illinois  60603
312.588.1440

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph J. Siprut, an attorney, certify that the foregoing **Second Amended Complaint** was filed electronically with the Clerk of the Court using the CM/ECF system on this 8th day of July, 2011, and served electronically on the following individuals:

> Tracy L. Gerber
> GerberT@gtlaw.com
> Patricia Leonard
> LeonardP@gtlaw.com
> Greenberg Traurig, P.A.
> 777 S. Flagler Drive
> Suite 300 East
> West Palm Beach, FL  33401

/s/Joseph J. Siprut

4852-0239-2073, v. 1